IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARGARITA FIGUEROA
CATHERINE M. SANTIAGO

Plaintiffs

vs                                                                CIVIL 07-2088CCC

MORGAN STANLEY DEAN WITTER, INC.

Defendant

## OPINION AND ORDER

This diversity action avers a violation of Puerto Rico Law 80, 29 L.P.R.A. §185a, by defendant Morgan Stanley Dean Witter, Inc. (MSDW), a brokerage firm, when it discharged, allegedly without just cause, plaintiffs Margarita Figueroa and Catherine Santiago who were employed as stockbrokers with the company. It is undisputed that plaintiffs worked with MSDW and its predecessor from 1986[1] until September 30, 2006, when they were discharged from their employment. Plaintiffs allege that after they were dismissed "MSDW continued operating in Puerto Rico and in multiple locations in the continental United States and around the world, employing individuals who performed the same job duties that plaintiffs performed during their employment with the company." Complaint, at ¶9. Plaintiffs further aver, at ¶10 of the complaint:

> MSDW did not follow seniority in its decision to terminate plaintiffs from their employment, did not offer plaintiffs similar positions in other branch offices, and retained individuals in the same job position plaintiffs held with less seniority, all of which contributes to their unjust dismissal under the provisions of Puerto Rico law.

As a result of the allegedly unjust termination, plaintiffs seek the compensation required under the law.

MSDW denies having discharged plaintiffs without just cause. It states that plaintiffs were separated from their employment because it closed its operations in Puerto Rico and "underwent changes, and reductions in employment were 'necessary by a reduction in the anticipated or prevailing volume of production, sales or profits.'" Answer to the Complaint,

---

[1]Santiago began on June 26, 1986; Figueroa began on July 27, 1986.

CIVIL 07-2088CCC                                  2

docket entry 3, page 5.  Defendant further admits that it did not make any severance payments but denies that plaintiffs were entitled to them because, under Law 80, the termination was for just cause.

Now before the Court is MSDW 's Motion for Case-Dispositive Summary Judgment and Incorporated Memorandum of Law **(docket entry 22),** which plaintiffs opposed (docket entry 27).  Movant replied to the opposition as well as to plaintiffs' own statement of material facts (docket entries 31 and 32 respectively).

Defendant points to the provision of Law 80 which provides that the complete or partial permanent closing of a business is just cause for the termination of employment and, therefore, no severance pay is due.  With regard to plaintiffs' allegations that their employer did not follow the seniority provisions of the law when they continued to operate with one broker who had been employed for less time that either plaintiff, MSDW contends that the position in question was in the "institutional" division, which is a different classification from the retail division, and therefore, the seniority provision does not apply.

**I. Summary Judgment Standard**

Summary Judgment "is proper if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law."  Rule 56 of the Federal Rules of Civil Procedure; Sands v. Ridefilm Corp., 212 F.3d. 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina Vargas, 168 F.3d. 42, 45 (1st Cir. 1999).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.  DeNovellis v. Shalala,124 F.3d. 298, 306 (1st Cir. 1997).  The nonmoving party must establish the existence of at least one relevant and material fact in dispute to defeat such a motion. Brennan v. Hendrigan, 888 F.2d 129 (1st Cir. 1989).  The purpose of a summary judgment motion is to "pierce the boilerplate of the pleadings and assay the parties proof in order to determine whether trial is actually required."  Wynne v. Tufts University, 976 F.2d 791, 794

CIVIL 07-2088CCC                                              3

(1st Cir. 1992). The Court must look at the record in the light most favorable to the non-moving party; however the Court need not rely on unsubstantiated allegations. Rather, the non-moving party may only overcome the motion with evidence sufficient to raise a genuine issue of fact that is both relevant and material. See, Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988); Cruz v. Crowley Towing, 807 F.2d 1084 (1st Cir. 1986). That is, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion [...]." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

On issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying on evidence that is "merely colorable" or "not significantly probative." Rather, the nonmovant must present definite, competent evidence to rebut the motion. Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993), citing Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st. Cir. 1991). Summary judgment is appropriate even when elusive concepts like motive or intent are in play if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Feliciano v. El Conquistador, 218 F.3d 1(1st Cir. 2000); Medina Muñoz v. R.J. Reynold Tobacco Co., 896 F.2d 5, 8 (1st Cir 1990). Therefore, the nonmoving party's failure to advance evidence establishing the essential elements of the cause of action, and for which they have the burden of proof, warrants the dismissal of the case through summary judgment. Celotex v. Catrett, 477 U.S. 37 (1986).

To defeat a motion for summary judgment, evidence offered by non-movant "must be significantly probative of specific facts." Prescott v. Higgins, 538 F.3d. 32, 40 (1st Cir. 2008), Pérez v. Volvo Car Corp, 247 F.3d. 303, 317 (1st Cir. 2001). We may ignore "conclusory allegations, improbable inferences and unsupported speculation. Prescott, at 40. A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.

CIVIL 07-2088CCC                                             4

**II. Law 80**

Puerto Rico Law 80 prohibits dismissal of employees without just cause. <u>Hoyos v. Telecorp Communications, Inc</u>., 488 F.3d. 1, 6 (1st cir. 2007). Under Law 80, once an employee proves that he was discharged and alleges that his dismissal was unjustified, the employer must establish by a preponderance of the evidence that the discharge was for good cause.

The first section, codified in 29 L.P.R.A. §185a, provides the method of calculating the severance pay for discharge from employment without just cause. The next section, 29 L.P.R.A. §185b, sets forth a list of reasons that constitute just cause for discharge, and, therefore, do not require any severance payment under the law. Said section provides, in pertinent part:

>  Good cause for the discharge of an employee from an establishment shall be understood to be:
>  . . .
>
>  (d) <u>Full, temporary or partial closing of the operations of the establishment</u>. Providing that, in those cases in which the company has more than one office, factory, branch or plant, the total, temporary or partial closing of any of these establishments will constitute just cause for dismissal pursuant to the Article.
>
>  (e) Technological or reorganization changes as well as changes of style, design or nature of the product made or handled by the establishment and changes in the services rendered to the public
>
>  f) Reductions in employment made necessary by a reduction in anticipated or prevailing volume of production, sales or profits at the time of the discharge.

(Official translation, our emphasis.)

Because plaintiffs have alleged that, after the closing of its retail client services, MSDW continued its operations with one employee, an institutional broker who had less seniority than either of them, we must also consider 29 L.P.R.A. §185c, which provides, in pertinent part:

CIVIL 07-2088CCC                                5

> In any case where employees are discharged for the reasons indicated in subsections (d), (e) and (f) of §185b of this title, <u>it shall be the duty of the employer to retain those employees of greater seniority on the job with preference</u>, provided there are positions vacant or filled by employees of less seniority in the job with their occupational classification which may be held by them, . . .
>
> Provided That:
>
> (a) in the case of discharges [under] subsection (d), (e) and (f) of §185 of this title in companies that have several offices, factories, branches or plants and <u>whose usual and regular practice is **not** to transfer employees</u> from one office, factory, branch or plant to another, and that said units operate in a relatively independent manner with regard to personnel aspects, the seniority of the employees within the occupational classification subject to the layoff <u>shall be computed by taking into consideration only those employees in the office, factory, branch or plant in which said layoff shall occur.</u>
>
> (b) in the case of companies having several offices, factories, branches or plants whose regular and usual practice is to transfer its employees from one unit to another, and that the various units operate in a relatively integrated manner with regard to personnel aspects, seniority shall be computed on the basis of all the employees of the company, that is to say, taking into consideration all of its offices, factories, branches or plants that are in the occupational classification subject to the independent.

(Official translation, our emphasis.)

As can be noted, plaintiffs have brought this suit only under Puerto Rico Law 80. The only cause of action under this law is for unjust termination of employment, and the only remedy is severance pay calculated according to §185a. <u>Otero-Burgos v. Inter American University</u>, 558 F.3d. 1-2 (1st Cir. 2009); <u>Corrada. Betances v. Sea-Land Service, Inc.</u>, 248 F.3d. 40, 44 n.4 (1st Cir. 2001). That is, there is no entitlement to any other remedy, and no severance pay is required when there is just cause for discharge and the employer has complied with any other applicable requirements in carrying out the termination.

CIVIL 07-2088CCC                                6

**III. Findings of Fact**

Having considered the complaint, the answer, the motions and supporting evidence in the record, the Court makes the following findings of fact:

1. Plaintiffs Santiago and Figueroa began working for defendant's predecessor in June and July, 1986, respectively.

2. In their careers as brokers/financial advisors, plaintiffs have always worked with "retail" clients; that is, primarily individuals and small businesses. Although qualified to do so, neither has ever worked with "institutional" clients. S-40,72 F-72.[2] Aside for the manner in which the brokers are compensated for their work, the difference between retail and institutional is better described as the category of client as opposed to a broker classification.

3. Plaintiffs worked as business partners, handling most of their clients together. Each of them had a few clients that they handled individually.

4. On August 22, 2006, executives of MSDW came to Puerto Rico to announce the complete closing of the retail brokerage section of its Puerto Rico branch, effective September 30, 2007.

5. After the closing, MSDW's Puerto Rico branch continued to operate with one institutional broker, Roberto Pietrantoni. Santiago's declaration, ¶7, ¶40; Figueroa's declaration ¶20,¶43. ("There is only one Morgan Stanley broker, Roberto Pietrantoni remaining in Puerto Rico after the closing of the retail branch.")

6. Among the plaintiffs and Pietrantoni, Santiago had highest seniority. Figueroa also had seniority over Pietrantoni.

7. Plaintiffs could only identify two persons who had ever transferred out of Puerto Rico to another MSDW branch. They were both managers: Alberto Pagan-Matos, a retail

---

[2]Designations S-# and F-# refer to the depositions of Santiago and Figueroa, respectively, and the page number where support for the finding of fact is found.

CIVIL 07-2088CCC                                        7

broker who was brought to Puerto Rico to be the Branch Manager, and was then transferred back to Florida a few months after the closing of the retail branch.  Figueroa's declaration 66; Santiago's declaration 125.  The other was the Operations Manager, Santiago's declaration:  ¶6; Figueroa's declaration ¶19". . . after my employment was terminated he transferred to the Miami branch of Morgan Stanley, where he currently works as a retail broker."

      8. MSDW's Puerto Rico office was a small branch that ran relatively independently with the branch manager in charge.  F-81-82.

      9. MSDW did not provide any termination/severance package to any of its retail brokers.  S-70

      10. MSDW did not offer relocation packages; employees interested in transferring to another branch would have to ask.  S-70

      11. The evening on which they received notice of the impending closure, August 22, 2006, plaintiffs prepared an email that was sent the next day to their client mailing list informing them that MSDW "was going to close the local office." they further stated:

> [W]e received calls from all the companies currently established in Puerto Rico since they were interested in showing us what they had to offer.
>
> The well-being of our clients has been and will continue to be our most critical concern in evaluating our options....
>
> During the next few weeks we will continue to keep you informed as to the steps that we will be taking, since your are essential factors in our decision. We thank you for your ongoing support and the trust we have developed over so many years.

Motion for Summary Judgment, Exhibit F.

      12. Immediately after news of the closure was made public, plaintiffs began to receive calls and offers from other brokerage firms in Puerto Rico that were interested in retaining their services.  They discussed their possible future employment with approximately eight

CIVIL 07-2088CCC					8

firms, S-28-30; F-29-32, and considered transferring to MSDW in Boston Massachusetts, as well.

    13. Plaintiffs went through proper MSDW channels to explore relocation to one of its branches in Boston, Massachusetts. For Example:

> Q: (Attorney Estevez) and [Pagán] told you, didn't he, that, and you told David Schwartz that you had been speaking to Alberto Pagan about you various options to move your business to another Morgan Stanley branch and told them that Massachusetts was where you were more interested in?
>
> Attorney Fernández: Objection to form.
>
> Q: Remember that?
>
> A: (Deponent Santiago) Yes, I do.
>
> Q: And do you remember that you had in the group meeting you had discussed that as well with your partner?
>
> A; Yes.
>
> Q: Ms. Figueroa?
>
> A: Yes.

S-70-71.

    14. Plaintiffs were unwilling to transfer to a United States branch of the other brokerage firms with which they were negotiating in Puerto Rico.

    15. Plaintiffs were concerned that their retail clients in Puerto Rico might be unwilling to have their accounts worked from a branch outside the island.  F-46

    16. At the time that the closure was announced, plaintiffs' emails to their clients show that their first concern was retaining client confidence and continuing the broker/client relationships.

    17. Clients also called Santiago informing that other brokers were calling to offer their services.  Santiago's declaration ¶22.  Santiago and Figueroa feared that they could lose

CIVIL 07-2088CCC                              9

their clients to their competitors in Puerto Rico since, with the closing of the retail division, they could no longer service their accounts at the MSDW Puerto Rico branch.

18. Seventeen days after the closing was announced, and although they had informed their clients that they were looking at opportunities both in Puerto Rico and with MSDW in the United States, on Friday, September 8, 2006, plaintiffs notified their clients by email that they had evaluated all of the offers, had reduced the choice to two companies and that they aimed to have a final decision on Monday, which would have been September 11, 2009. They emphasized, "The Money Managers which you have in your Portfolio **do have** an agreement with the two finalist companies, so that the positions as they are currently invested could be transferred **without causing tax consequences**." Id., Exhibit G, (Emphasis in the original.) The two finalists were Wachovia and Merrill-Lynch. S-147; F-102. That is, plaintiffs made their decision before they had the offer from MSDW-Boston.

18. On September 22, 2006, Figueroa and Santiago sent an email notifying their clients of their acceptance of Wachovia's offer. They stated, among other things,

> The accessability and quality of information, the availability of bonuses and investment products for the local market being offered by Wachovia contributed significantly to our decision that Wachovia would be the ideal company to move our team to....
>
> . . . We received attractive offers from a number of companies, and we sat down and analyzed them all closely in order to make the best selection. We are convinced that we have made the best choice.

Id., Exhibit I.

They went on to state that in order to "carry out an effective, efficient and satisfactory transition, they had made preparations to insure that the transfer of the accounts would be quick, smooth and involve no charges.

19. Besides bringing most of their own clients to Wachovia, plaintiffs also brought clients whose accounts they had inherited from other departing brokers. S-115

CIVIL 07-2088CCC                                            10

20. Besides substantial signing bonuses totaling $770,000.00 for themselves, plaintiffs negotiated Wachovia's payment of transfer fees due to MSDW, which ordinarily would have been paid by their clients.  F-45

21. When the manager of the Boston branch of MSDW called Santiago in late September, 2006, before the closure of the Puerto Rico branch became effective, to make plaintiffs an offer, Santiago turned it down because they had already accepted Wachovia's offer.  She further stated, "When the manager called he called towards the end of September and for us it was an offer that UBS or Merrill Lynch or Popular Securities would have presented.  S-68.

Based on the findings of fact set forth above, the Court reaches the following:

**IV. Conclusions of Law**

MSDW's closing of all its operations in Puerto Rico, except for the one remaining position as an institutional broker, constitutes a partial, permanent closing, which, under 29 L.P.R.A. §185b(d), is just cause for termination.

Inasmuch as the only persons that plaintiffs could identify who had ever transferred out of Puerto Rico to another MSDW branch were two managers who went to Florida, we find that it was not the employer's regular and usual practice to transfer its employees from its Puerto Rico branch to another unit. Because such transfers were not the regular and usual practice, and because the Puerto Rico branch operated with relative independence, plaintiffs' seniority is calculated pursuant to the §185c(a) proviso by considering only employees in the Puerto Rico branch.  As previously stated, the sole remaining position in MSDW's Puerto Rico office after the closure was that of institutional broker, occupied by Roberto Pietrantoni.

The evidence shows that plaintiffs' primary interest was always focused on allaying the concerns of their retail clients and preserving their long-standing business relationships. Their actions, from the moment that they learned of the impending closing of the MSDW

CIVIL 07-2088CCC                              11

Puerto Rico's retail division, until they made their final choice from among the many job offers, were directed toward retaining their retail clients, whom they could no longer service in through the MSDW branch in Puerto Rico.  The evidence reveals that in pursuing their own interests and those of their retail clients, plaintiffs considered several business options, pondered which was most beneficial for them, and ultimately decided to accept Wachovia's offer and reject the MSDW-Boston branch offer.  The record undisputedly demonstrates that neither plaintiff was interested in occupying the only remaining position, as an institutional broker at MSDW's Puerto Rico branch.

      The above constitutes the statement of reasons and legal analysis in support of the September 30, 2009 Judgment based on the determination that there is no genuine issue as to any material fact and that as a matter of law defendant Morgan Stanley Dean Witter, Inc. is entitled to summary judgment having found that plaintiffs are not entitled to severance pay under Law 80, 29 L.P.R.A. §§185, et seq.

      SO ORDERED.

      At San Juan, Puerto Rico, on November 4, 2009.

                                                  S/CARMEN CONSUELO CEREZO
                                                  United States District Judge